## W. C. MULLINS v. J. E. GREENWOOD et al.

Western Section. December 20, 1927.

No petition for Certiorari was filed.

1. **Contracts. Substantial compliance is all that is necessary in a building contract.**
Formerly the common-law rule with respect to literal performance was applied to building contracts. But in reference to such contracts the equitable doctrine relating to substantial performance, has, in the United States, at least been adopted, even at law in cases where the failure to perform literally is not due to the bad faith of the builder.

2. **Evidence. Any evidence competent to overcome defendant's testimony is proper in rebuttal.**
In an action to recover on a contract where the defendant testified that he had not been notified to perform his part of the contract, held the plaintiff could properly introduce in rebuttal witnesses to show that he had been notified.

3. **Trial. Trial court may use its discretion in continuing trial for party to produce witnesses.**
Where it was urged as error that the trial court erred in closing the trial while one of plaintiff's witnesses was on the way to the court, held that it is largely within the discretion of the trial court as to whether he should continue the trial for a party to produce a witness and under the circumstances in the instant case it could not be held error for him to refuse to do so.

4. **Trial. Plaintiff can not recover a greater amount than prayed in petition.**
Where the jury allowed plaintiff an amount larger than asked for in his petition held error and that the amount must be reduced to the amount prayed for.

5. **Appeal and error. Action of juror held not to warrant new trial.**
Where a juror asked certain questions in regard to a contract and the court later gave an instruction to the jury advising the jury in regard

to that point of construction held that the remarks of the juror were not sufficient to warrant a new trial.

6. Jury. The court must assume that a juror is actuated by proper motives. Where a juror asked certain questions which the defendant claimed showed passion and prejudice held that the court must assume that the juror in asking the questions was actuated by proper motives and that the questions did not indicate any passion or wrong attitude on the part of the juror toward the defendant.

Appeal from Chancery Court, Shelby County; Hon. M. C. Ketchum, Chancellor.

Affirmed and remanded.

J. G. Reasonover, of Memphis, for appellant.

C. D. Pierce and C. S. Seay, of Memphis, for appellee.

SENTER, J. The transaction out of which this litigation arose was on a written contract between the complainant W. C. Mullins and the defendant J. E. Greenwood for an exchange of property and the erection. of a residence on the lot of Mullins. Mullins was the owner of the vacant lot situated in Memphis, and the defendant J. E. Greenwood and wife owned a small residence on a lot in the City of Memphis. By the terms of the contract the parties agreed to an exchange of property, Mullins to erect a residence on the lot which he owned, and his property with the residence to be erected thereon was valued in the exchange at $6,000. The property which the defendants owned was valued in the exchange at $3,000. However, the valuation of $6,000 was for the vacant lot with the residence to be erected thereon and including the heating plant to be installed, but which heating plant was to be installed by the defendants, and at the expense of the complainant. It appears that this arrangement was made because the defendant J. E. Greenwood was employed by the Fisher Heating Company of Memphis, and desired to install the plumbing and heating himself, but to be paid for by the complainant. While the work of erecting the residence was in progress, complainant Mullins desired to make some repairs on the house that he was taking in on the trade, by building two porches and other improvements on said house, and the consent of the defendants was obtained by Mullins to make these improvements and repairs, and which he proceeded to do. The contract between the parties provided that upon the completion of the residence by Mullins on the lot owned by him he was to execute and deliver to the defendant Greenwood a warranty deed, but subject to $3,000 encumbrance thereon; and which excumbrance was assumed, or to be assumed by Greenwood; and that Greenwood and wife were to execute and deliver to Mullins a warranty deed, free from all encumbrance, to the property they were putting in on the trade.

The original bill was filed in this cause by complainant W. C. Mullins alleging in substance that complainant had fulfilled the terms of his contract, and had completed the house on his lot and had executed and tendered to the defendants a deed in accordance with the terms of the contract, and had demanded of the defendants that they fulfill their part of the contract, and that defendants failed and refused to deliver a deed to their property, or to carry out the terms of the contract. The bill further alleged that complainant put the repairs and improvements on the house of defendants with their full consent, expecting that defendants would comply with the provisions of the contract, by executing and delivering to complainant a warranty deed to the property, and would, in return accept the warranty deed of complainant to the property which he was to convey to them upon the completion of the residence. The bill alleged that because of the refusal of the defendants to execute and deliver to him the warranty deed to their property, and upon which he had put the repairs and improvements, and their refusal to comply with the contract by accepting the deed which he tendered to them to his property upon the completion of the house, that he had sustained a damage in the sum of $1,000, in addition to the value of the improvements. The prayer of the original bill was for a decree in favor of complainant and against defendants for the sum of $500.15 with interest thereon from the 17th day of August, 1926, and that in addition to said sum complainant have a decree against the defendants for damages in the sum of $1,000; and prayed that a lien be declared in favor of complainant upon the property described in the bill as belonging to the defendants, and for the enforcement of said lien by a sale of the property, and for an attachment against said property, and prayed for general relief.

The defendants filed a demurrer to the original bill, setting forth several grounds, but which we deem unnecessary to refer to, and this demurrer was overruled by the court. Whereupon, the defendants filed an elaborate answer, making the answer a cross-bill seeking certain affirmative relief. The answer and cross-bill denied the allegations in the bill to the effect that complainant had in good faith, after entering into the contract, furnished materials and labor in the improvements of defendant's property, and denied that complainant had expended for said repairs and improvements for materials and labor the sum of $500.15, and denied that the complainant had made any improvements on said property or had done any work thereon under any contract either express or implied. The answer denied that the defendants are indebted or liable to complainant in any amount for any work done or materials alleged to have been furnished on defendant's property as alleged in the bill. The answer in this connection charges that complainant in bad faith and

for the purpose of complicating transactions, and for the purpose
of defrauding and evading his obligations to construct a residence
according to the terms and specifications, entered upon defendant's
premises and requested permission to make some repairs upon the
house, and in doing so used certain lumber which belonged to the
defendants, and thereby incurred a liability to the defendants to
the extent of the value of said lumber, and that said improvements
were not made at the request of the defendants or for their benefit.
The answer denies that complainant has fulfilled the terms of his
contract, and denies that the house which complainant was to erect
was completed according to the terms and specifications of the con-
tract, although the defendants have urged the complainant to com-
plete the house, but that complainant persisted in violating the con-
tract by using inferior materials in the construction of said house,
and by slighting the work and cheapening the construction in numer-
ous ways.    The answer further avers that the house was not com-
pleted within sixty days as provided in the contract and denies that
complainant had ever completed the house according to the specifica-
tions as set forth in the contract.    The answer further charges that
after the expiration of the sixty days stipulated in the contract in
which the house was to be completed, and while it was still incomplete,
the complainant fraudulently offered or pretended to tender a deed
to said house and lot, and that defendants declined to accept the
deed because the house had not been completed according to the
terms of the contract, and because of inferior materials used by com-
plainant in the building, and that complainant has since abandoned
said contract and has sold the house and lot to another party.    It
is charged in the answer and cross-bill that in anticipation that the
house would be constructed according to plans and specifications, and
that the trade would go through according to contract, the defend-
ants purchased a considerable quantity of new furniture with which
to furnish said house, and went to other expenses and had been
damaged in the sum of $1500 because of the failure and refusal of
complainant to construct the house and to use materials specified in
the contract, and the refusal to complete the house according to the
terms of the contract, and prayed that the answer be treated as a
cross-bill, and that cross-complainants be decreed a judgment against
cross-defendants for said sum of $1,500, or such sum as cross-com-
plainants had been damaged.

    The cross-defendant filed an answer to the cross-bill, denying all the
material allegations contained in the cross-bill, and denied that
the house was not built of the materials specified.    The answer to
the cross-bill stated that Greenwood, who employed by Fisher Heat-
ing Company, was to have installed the heating plant in said house;
and that when the house was ready for the installation of the heat-

ing plant the defendant Greenwood was out of the City of Memphis, and did not return to install the heating plant within the time required. The answer to the cross-bill further states that any delay in the completion of the house within the time provided in the contract was due to the actions and conduct of cross-complainants, requiring and demanding more to be done than the contract provided should be done, and that cross-defendant in his desire to please and satisfy cross-complainants made these changes, and also agreed with defendants that one J. E. Underwood could install the heating; that although defendants (cross-complainants) agreed to do this, and were notified that the house was ready for the installation of the heating that defendants (cross-complainants) did not do this work and did not take any steps toward having it done. The answer denies all allegations of fraud contained in the cross-bill.

At the hearing of the cause issues of fact were made up by the parties under the direction of the court to be submitted to the jury. As these issues of fact are made the basis of certain assignments of error, we set them out.

"1

"What was the value of defendants' property, known as No. 31 Empire Street, being lots 27, 28 and 29, Colby's Sylvan Heights Sub-divison, before any work was done thereon by complainant?

"Answer: $3,000.

"2.

"And what amount, if any, was the value of defendants' property, located as shown in issue No. 1 increased by labor performed and material furnished thereon by complainant?

"Answer: $575.

"3.

"Did the complainant prior to tendering to the defendants a deed to the real estate known as Lot 157, Hill Crest Sub-division, agreed by complainant to be conveyed to the defendants erect on said real estate a house and garage, substantially as provided in contract entered into between complainant and defendants, to be erected by complainant with the exception of heating plant?

"Answer: Yes.

"4.

"If you answer 'Yes' to issue No. 3 what was the value of the property owned by complainant as described in issue No. 3 and agreed to by him to be conveyed to defendants after the erection of said house and garage?

"Answer: $6,000 less the cost of heating plant.

"5.

"If you answer 'No' to issue No. 3, how much damages if any, are the defendants entitled to recover from complainant by reason of his failure to comply with the terms of said contract?

"Answer: ————"

Upon the finding of the jury on the above issues, the Chancellor decreed a judgment in favor of complainant W. C. Mullins, against the defendants J. E. Greenwood and Anna L. Greenwood for the sum of $575, and the costs of the cause. The Chancellor further decreed that a lien be fixed and declared upon the property of the defendants J. E. and Anna L. Greenwood, described in the pleadings, for the purpose of securing to the complainant the payment of said sum of $575 and the cost of the cause, and further decreed that in the event said judgment and costs are not fully satisfied within thirty days from the date of the decree, that the property be sold and the proceeds applied to the payment and satisfaction of the judgment decreed.

The defendants excepted to the decree and made a motion for a new trial, which motion was overruled and to which action of the court the defendants excepted and prayed an appeal to this court which was granted and has been perfected. Numerous errors have been assigned.

We will not undertake to discuss each and all of the assignments of error separately.

By the first assignment of error it is contended that the court erred in submitting issue No. 3 to the jury. It is insisted by appellant that this issue excluded from consideration by the jury certain important and material facts necessary for their determination in order to ascertain whether or not complainant had complied with his contract to build the house; that it withdrew from the jury the question of determining the fact whether or not it was the fault of the complainant or the defendant that resulted in the failure to install the heating plant, and whether the requisite notice was ever given by Mullins to Greenwood relative to the installation of the plant, and whether or not he ever consented or agreed to the arrangement, and because it altered and varied the terms of the written contract sued for, etc.

This assignment of error cannot be sustained. This was one of the material issues presented by the pleadings. This was an issue of fact and not an instruction to the jury. The court instructed the jury with reference to the issues of fact. The issues of fact were made up by the parties under the direction of the Chancellor. No exception was made to the submission to the jury of this particular issue of fact, nor to the other issues of fact submitted to the jury. This issue being pertinent to the pleadings was properly submitted.

The second assignment of error is directed to the charge of the court to the jury with reference to the third issue of fact. The court stated that the third issue presents the question whether complainant, Mullins, did in good faith perform the contract on his part; that if he did not erect the house substantially in accordance with the terms of the contract, except with reference to the heating system, then he has breached the contract on his part and would not be entitled to recover damages because of Greenwood's refusal to accept the deed. If, on the other hand, he did in good faith, comply with all the terms of said contract, then Greenwood's refusal to accept the deed would constitute a breach of the contract on his part and he would be liable to the complainant for the damages actually sustained by reason of the breach. It is insisted by appellant that this charge was erroneous and prejudicial, in that it allowed for the recovery upon the contract that was admittedly incomplete, and without permitting the jury to consider the fact or issue as to why the heating plant was not installed, and the contract fulfilled in that respect, and whether or not said failure was caused by any agreement or fault of the defendants. It is further insisted that the charge was erroneous because it allowed for a substantial compliance, whereas, in contracts like the one in question the law requires strict compliance.

We do not think that this assignment of error is well taken. There is no dispute in the record but that it was subsequently agreed to by the parties that the defendant Greenwood was to install the plant, but to be paid for by complainant. We are also of the opinion that the court correctly charged that the rule of substantial compliance with the contract upon the part of the complainant was all that the law required. This means that the contract must be performed substantially in accordance with its terms, and if in the erection of this building it was constructed in accordance with the terms of the contract without material variance, it would be a substantial compliance. In 6 Ruling Case Law, sec. 343, under the topic of contracts, page 967, it is said:

"Formerly the common-law rule with respect to literal performance was applied to building contracts. But in reference to such contracts the equitable doctrine relating to substantial performance, has, in the United States at least, been adopted, even at law in cases where the failure to perform literally is not due to the bad faith of the builder."

In discussing this same rule it is further said under the same section:

"The second reason given for the substantial performance rule is that it is next to impossible for a builder to comply literally with all the specifications in a building contract."

The third assignment of error is directed to the action of the court in permitting the complainant Mullins, as a witness, after he had closed his case, and the defendant had testified, to be recalled to testify further with reference to the alleged notice which he claimed to have given Greenwood that the house was ready for the heating. Under this assignment of error it is insisted that this was proof in chief and not properly admissible as rebuttal evidence. This contention cannot be sustained. In the first place it was proper as rebuttal evidence by way of rebutting the statement made by Greenwood that he had not been so notified or advised. In the second place it was a matter for the discretion of the court.

By the fourth assignment of error it is said that the court erred in declining to set aside the verdict of the jury and grant a new trial because of the surprise to the defendant occasioned by the alleged fault and prejudicial testimony offered by complainant that the defendant was notified to have the heating plant installed, and that this evidence was admitted in rebuttal. We fail to see why this evidence was a surprise to the defendant. Mr. Greenwood testified in his examination in chief, pages 102-3 of Tr. as follows:

"Q. Now, in regard to this heating plant, Mr. Greenwood, what have to say about the agreement between you and Mr. Mullins that you would do the work? A. I had it in the contract that the Fisher Heating Co. was to do the heating—and when I was ready for the plumbing to be put in and the heating to be put in, that I was to do the heating myself, work for the heating myself, but I was never notified when the house was ready for it, neither were the plumbers notified. . . ."

From the above it is seen that the defendant Greenwood claimed that he was to be notified when the house was ready or in condition for the plumbing or heating to be installed, and that he was never notified that the house was ready for him, nor were the plumbers notified. In view of this evidence by the defendant Greenwood, we think it clearly competent for the complainant, Mullins, to be recalled, and to rebut that statement by testifying that he had given Greenwood the notice, etc. We find no error in the action of the court under this assignment of error.

The fifth assignment of error is also overruled. By this assignment of error it is said that the court erred in declining to postpone the conclusion of the trial until the foreman or manager of the Fisher Heating Company, who was shown to be within a few blocks of the courthouse and on his way to the courtroom, to arrive as a witness to deny the statement of Mullins to the effect that Greenwood had been notified that the house was ready for the heating. This was a matter in the discretion of the court. It is the duty of the Chancellor to expedite the trial of the case, and we cannot say

that the Chancellor abused his discretionary powers by declining the request that the trial be suspended until this witness could be at the courthouse and. in the courtroom. Besides the defendant Greenwood had testified on this subject as a part of his proof in chief, and having gone into the question in his proof in chief, if he deemed it important to have his evidence corroborated on that question, he should have had the witness present.

The sixth assignment of error is on the same subject. By this assignment of error it is insisted that a few minutes after the testimony had been completed and when counsel for complainant had just commenced presenting the case to the jury, the defendant moved to be permitted to then introduce the witness who had arrived at the courthouse, and that it was error on the part of the court to refuse to reopen the case and permit this witness to testify. This assignment of error must be overruled for two reasons: First, it is not shown by the record what the evidence of the witness would have been. Second, it was in the discretion of the trial judge. The case was then being argued by counsel to the jury. There was no abuse of the discretionary power of the court not to stop the argument, and reopen the case for further evidence.

The seventh and eighth assignments of error will be subsequently discussed. The ninth assignment of error is based upon the answer of the jury to issue No. 3 and fixing the amount at $575, because it is claimed that the actual cost of complainant for making the repairs and improvements was only $500.15, and that the original bill only sued for this amount. The original bill sued for the cost of repairs and also for damages resulting from the alleged breach of the contract.

The answer to issue No. 2 was clearly responsible to the issue as framed and submitted to the jury. We are also of the opinion that the court correctly charged the proper measure of damages as being the difference in the value of the property before the improvements were made by Mullins and after the improvements were made. However, we are of opinion that in view of the fact that the bill alleged that complainant was entitled to recover for that item the sum of $500.15, that the court should have instructed the jury further, by stating that the recovery could not be in excess of the amount sued for in the bill, which was $500.15. While it is true that the cost of making the improvement would not be the measure of damages, and that the proper measure of damages would be the difference in the value of the property before the improvements were made and after the improvements were made, but where the complainant alleged in the bill that it was entitled to recover on the basis of the cost of the improvements to complainant, and alleged that would be $500.15, and only sued for that amount on that particular item, the recovery could not be for a greater amount than sued for.

The twelfth, thirteenth and fourteenth assignments of error are overruled, because we find there was material evidence to support the verdict of the jury on each of the issues three, four and five.

The fifteenth assignment of error cannot be considered because the evidence complained of is not set out under the assignment.

The sixteenth assignment of error is not well taken and is overruled. It is based upon the action of the court in declining, upon the demand of the defendants, to require complainant to furnish an itemized list of the cost price of lumber and improvements made upon defendant's property, and to furnish the names of the dealers from whom the materials were purchased. This evidence was immaterial. It was not encumbent upon the complainant to furnish this information. Issue No. 2 presented the proper basis for a recovery, if any, except as hereinabove stated.

The seventeenth, eighteenth and nineteenth assignments of error are to general to be considered, and the questions presented are disposed of by other assignments of error.

By the seventh assignment of error appellant complains that the action of the court in declining to set aside the verdict of the jury and grant a new trial because of alleged improper and prejudicial conduct by the attorney for complainant in the presence and hearing of the jury, by inquiring of witnesses and endeavoring to introduce testimony with reference to alleged alterations or changes in the contract.

The attorney for complainants, in a very proper way, inquired of the witnesses with reference to certain items written into the typewritten contract in pen and ink. Certainly there can be no criticism of counsel for complainant in seeking to develop the facts with reference to the items written in with pen and ink, where the contract is typewritten, and these items added after the contract had been typewritten. The eighth assignment, as above stated, presents a more serious question. It is directed to the action of the court in overruling the defendants motion made during the trial of the case to discharge the jury and to declare a mistrial, because of the alleged prejudicial remarks and questions by a member of the jury addressed to the defendant Greenwood while Greenwood was testifying as a witness in his own behalf. By this assignment of error it is insisted that the attitude of the juror was shown to be and to indicate prejudice by said juror against the defendant Greenwood, and showed his bias and prejudice and adverse attitude toward the case of the defendant.

It is shown by the bill of exceptions that while the defendant Greenwood was testifying in his own behalf with reference to the items written into the contract, and while the witness was being ex-

amined especially on the subject of the items which he claimed were not in accordance with the specifications, this occurred:

"Q. I will ask you to take this paper picture and go over the list of other things that you say was not up to the contract? A. Floor and windows in the side of the living room—here is what I found out on September 29, 1926—no carpet strips at the bathroom door, no quarter round, plastering unfinished in either bathroom, no place on the house for either water or light fixtures, five-panel door where there should have been a two panel door. The contract calls for all two panel doors on the inside.

"Juror: What do you call that? Witness: The contract calls for a glass door in the front and a glass door in the back.

"Juror: Will you read the clause in that contract that calls for doors? Witness: Yes, sir, I certainly will. (Witness takes contract, turns to a part of it) and reads as follows: Each bedroom to be one single window.—

"Juror: Is that part written in there in ink? Witness: Yes, sir.

"Juror: I don't care anything about that, what I want to know—

"Mr. Reasonover (Att'y. for defendant): If it is in there I want it read.

"Court: The jury says he has asked for what he wanted.

"Juror: What I wanted about that, was that typewritten copy. Witness: This was written in after the typewriting was done, some things had been left out and I asked Mr. Reasonover if it was alright to put it in there.

"Witness: That contract was written by Mr. Reasonover on the afternoon of the 27th day of July. On the night of the 27th day of July I went to Mr. Mullins home on Holmes avenue with this written in there. Everything as written in this contract was in there when Mr. Mullins signed that contract and from that day until this I have not had that contract in my hands, but that one right over there (pointing) he signed the whole thing at the bottom.

"Mr. Reasonover: I thought that was excluded. I am willing to submit it all now if the gentlemen want to see it.

"Juror: I have made up my mind I wouldn't pay any attention to it. I will say that now. Who wrote that in there? Witness. I did.

"Juror: Did you ask Mr. Reasonover about it at any time? Witness: I asked Mr. Reasonover if it would be alright for me to put it in there with pen and ink and he said you can put anything in there—if it was in there before I signed the contract it would be alright.

"Juror: Wasn't the contract signed in Mr. Reasonover's office? Witness: No, sir, it was not. It was signed in Mr. Mullins home on Holmes avenue on the night of the 27th of July.

"Q. I prepared the contract in my office and delivered it to you for you and Mr. Mullins to execute later. A. Yes, sir.

"Q. The changes you made were made and written in there before the contract was signed. A. I wrote them in there before I went to Mr. Mullins house. From where I lived to where Mr. Mullins lives is five miles, approximately five miles.

"Juror: If your Honor please, if there is a change in the contract could it not be authenticated by both parties? Witness: That was in there and I took it and read it out to Mr. Mullins, and the witness who is on there, and told them that I don't want you fellows to think that I am trying to put anything over you, and that if what I read to them, and he said, 'Whatever you want is alright with us, you are the kind of man we like to deal with, you know what you want.' Now that was before they ever drove a nail or stuck a shovel in the ground. He said, 'Whatever you say about it is alright.' He signed the contract, I signed it and my wife signed it right in his house.

"Court: You did not sign that memorandum? Witness: It was on there at the time we signed it."

The above constitutes the basis for the motion made by defendants that the jury be dismissed and a mistrial ordered.

In the course of the instructions to the jury by the court on the issues of fact, the Chancellor stated on this subject as follows:

"Some question has come up in the presentation of the testimony and in the argument about the pen and ink memorandum on the back of the second page of the contract. Although there is some controversy with reference to whether this was written before or after the contract was signed, and whether it is proper to be considered as a part of the contract, I charge you that you may treat it as a part of the contract. No issue is made about that in the pleading, and the complainant contends, in his proof, that he has done all the things required in this memorandum, so I charge you that he is bound by it."

While it would appear that the juror who questioned Greenwood with reference to the pen and ink provisions in the contract expressed a disinclination to consider these provisions written in with pen and ink, it also appears that this juror had the idea, that before the items written in with pen and ink could be considered, that the portion filled in with pen and ink would have to be authenticated by the signatures of the parties to the contract, showing that the particular items so written in with pen and ink had been assented to by both parties to the contract. When the court came to charge the jury on this question it was made clear to the jury, for the reasons stated in the charge, that these items should be considered by the jury as a part of the contract. This court must assume that the juror is asking the questions to the witness above quoted was actuated by proper motives, and that these questions and statements made by the juror

did not indicate any prejudice or wrong attitude toward the defendants, but was more in the nature of a statement of his understanding or impression as to what the law would require in order to entitle the items written in with pen and ink to be considered. We must also assume that this jury was willing to abide by the instructions of the court. We think it also appears that the items referred to in the portion of the contract written with pen and ink were fully complied with by the complainant, and these items are not complained of by the defendants as not having been performed. We are of the opinion that this assignment of error must also be overruled.

Referring further to the ninth assignment of error, we think that for the reasons hereinbefore stated the recovery in favor of complainant under issue No. 2 should have been limited to the amount sued for by complainant in the original bill on this particular item, which was $500.15.

It results that the decree of the Chancellor will be modified by reducing the judgment for $575 to $500.15 and the interest thereon from the date of the decree in the lower court, and that the lien as declared on the property by the Chancellor will be modified to the extent that the lien will be given to secure the payment of $500.15, with interest, and in all other respects the decree of the Chancellor is affirmed. The cost of this appeal will be paid by appellants and sureties on the appeal bond.

Owen and Heiskell, JJ., concur.