# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**February 20, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

THOMAS W. HARRISON,           )
TERRY HARRISON, and            )
BRENDA KENNAMORE,              )
                               )
    Plaintiffs/Appellees,      )     Giles Chancery
                               )     No. 7581
VS.                            )
                               )     Appeal No.
EARL LAURSEN and               )     01A01-9705-CH-00238
DOLORITA LAURSEN,              )
                               )
    Defendants/Appellants.     )


APPEAL FROM THE CHANCERY COURT FOR GILES COUNTY
AT PULASKI, TENNESSEE


THE HONORABLE JIM T. HAMILTON, JUDGE


For Plaintiffs/Appellees:

M. Andrew Hoover
ANDREW HOOVER & ASSOCIATES
Pulaski, Tennessee

For Defendants/Appellants:

John S. Colley, III
COLLEY & COLLEY
Columbia, Tennessee


# REVERSED IN PART; VACATED IN PART;
# AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal stems from a contractual dispute over the sale of a 128-acre farm in Giles County. The sellers filed suit in the Chancery Court for Giles County alleging that the buyers had breached their contract by defaulting on their payments. The buyers counterclaimed that the sellers had breached the contract by failing to provide city water for the property. The trial court, sitting without a jury, rescinded the contract, awarded the sellers their unpaid interest as well as the buyers' previous payments, and dismissed the buyers' counterclaim. This court reversed the damages portion of the judgment and remanded the case for another trial on the issue of damages only. The case has been tried four additional times since that appeal. The buyers have now appealed to this court for the third time following a $32,901.54 jury verdict for the sellers in the fifth trial. We have determined that the judgments against the buyers must again be vacated because the trial court erroneously refused to permit one of the buyers, who was representing himself, to testify and because the judgment against the other buyer was reversed by this court on the second appeal.

## I.

In January 1988, Earl and Dolorita Laursen contracted with Thomas Harrison, Terry Harrison, and Brenda Harrison Kennamore to purchase a 128-acre farm known as the McCaskell place on Haywood Creek Road in Giles County. The parties agreed that the total purchase price would be $128,000, and that the Laursens would pay $5,500 down, assume an $86,797.67 mortgage, and repay the remaining $35,702.32 at eight percent interest. The Laursens also agreed to sell other property they owned in Giles County and California if the sellers required their money earlier.

The Laursens stopped making their payments in August 1990 ostensibly because the Harrisons had reneged on an agreement to supply city water to the property.[1] In January 1991, the Harrisons filed suit against the Laursens in the Chancery Court for Giles County seeking recision of the contract, damages, and the forfeiture of the mortgage payments that the Laursens had already paid. The Laursens, for their part, counterclaimed for recision or specific performance.

_____

[1]The record contains some proof that the Laursens planned to subdivide and develop the property rather than use it as a working farm.

Following a bench trial, the trial court rescinded the contract, awarded the Harrisons $10,775.27 in lost interest, and ordered that the mortgage payments already made by the Laursens be forfeited. This court later affirmed the judgment of recision but vacated the awards of damages for lost interest and for the mortgage payments that the Laursens had already made because they were inconsistent with the remedy of recision. Accordingly, we remanded the case for a trial on the issue of damages, noting that

> the Laursens are entitled to recover the amounts paid on the purchase price plus the taxes. The Harrisons are entitled to be compensated for the use of the land while it was in the Laursens' possession. If the changes made on the property by the Laursens increased its value, they are entitled to the increase; if the changes caused the property to depreciate, the Harrisons are entitled to recover the amount of the depreciation.

*Harrison v. Laursen*, App. No. 01A01-9204-CV-00177, 1992 WL 301309, at \*4 (Tenn. Ct. App. Oct. 23, 1992) (No Tenn. R. App. P. 11 application filed).

Following a second trial in May 1993, the jury returned a verdict in favor of the Laursens for approximately $10,000[2], but the trial court suggested an additur increasing the Harrisons' damages for diminution of the farm's value which, if accepted, would have resulted in a judgment in the Harrisons' favor for $13,000.[3] Not surprisingly, the Laursens declined to accept the additur, and the trial court granted a new trial. The jury in the third trial, like the jury in the second trial, determined that the value of the farm had decreased by $15,000 while in the Laursens' hands. The trial court again granted a new trial on the ground that there was no basis in the record for the jury's verdict.

The parties' fourth trial was before the trial court without a jury, and the trial court awarded the Harrisons over $22,000 after determining that the value of the property had decreased by $40,000 and that the Laursens owed $8,800 in rent for the

---

[2]The jury determined that the Laursens owed the Harrisons $21,720 consisting of $15,000 for the diminution in the value of the property, $5,720 for rent, and $1,000 for the removal of a log cabin. Since the jury determined that the Laursens had already paid the Harrisons $32,278.46, it determined that the Laursens should recover $10,558.46.

[3]The trial court suggested increasing the damages for the depreciation in the value of the farm from $15,000 to $39,000.

home and $5,757 in rent for the pastures. The Laursens again appealed to this court. We held that Ms. Laursen had not properly perfected her appeal, *see Harrison v. Laursen*, App. No. 01A01-9505-CH-00192, 1996 WL 221862, at *1 (Tenn. Ct. App. May 3, 1996) (No Tenn. R. App. P. 11 application filed), but we also reversed the judgments and ordered a new trial because the trial court had denied his request for a jury. *See Harrison v. Laursen*, App. No. 01A01-9505-CH-00192, 1996 WL 221862, at *7. Accordingly, we directed the entry of a judgment against Ms. Laursen but reversed the judgment against Mr. Laursen and remanded the case to give him a jury trial on the remaining damage issues.

Ms. Laursen filed a Tenn. R. Civ. P. 60.02 motion to set aside the judgment in the fourth case because it had been overturned by this court. The trial court denied her motion. Later, following a fifth trial, a jury awarded the Harrisons a $32,901.54 judgment against Mr. Laursen. Both Mr. Laursen and Ms. Laursen have appealed. Ms. Laursen takes issue with the trial court's failure to grant her Tenn. R. Civ. P. 60.02 motion. Mr. Laursen challenges the judgment against him because the trial court refused to permit him to testify because he was representing himself and because the amount of the judgment exceeded the ad damnum in the Harrisons' complaint.

## II.
### THE EXCLUSION OF MR. LAURSEN'S TESTIMONY

Mr. Laursen disagrees with the trial court's refusal to permit him to testify as a witness in his own case. Before we address the merits of this claim, we must determine whether Mr. Laursen made an offer of proof as required by Tenn. R. Evid. 103(a)(2). We have determined under the circumstances of this case that Mr. Laursen substantially complied with Tenn. R. Evid. 103(a)(2) and that the trial court erred by declining to permit Mr. Laursen to testify in his own case.

### A.

Even though he had been represented by counsel in the prior proceedings, Mr. Laursen elected to represent himself during the fifth trial. After calling four witnesses during his case-in-chief, Mr. Laursen announced that "I'd like to witness myself." The trial court replied:

> No, Sir, you can't do both, Mr. Laursen. You've assumed the role of an attorney, which you have the right to do, but you can't testify; you can't be a witness and assume the role of an attorney. Let me explain why, Mr. Laursen. What you would have to do, is you would have to say, "What is your name" and then you'd have to go over there and get in the chair and say, "My name is Earl Laursen." Then you'd have to get up and say -- Well it's just not allowed, so that's the reason.

After hearing the trial court's explanation, Mr. Laursen responded, "Well I'd like to have you offer some kind of proof of why I'm not allowed." The trial court ended the conversation by stating "I've just ruled that it's not proper and it's not done and it's not going to be done. Anything else?"

**B.**

The purpose of an offer of proof is to enable the appellate court to determine whether the trial court's exclusion of proffered evidence was reversible error. *See State v. Goad*, 707 S.W.2d 846, 853 (Tenn. 1986); *Harwell v. Walton*, 820 S.W.2d 116, 118 (Tenn. Ct. App. 1991). An offer of proof must contain the substance of the evidence and the specific evidentiary basis supporting the admission of the evidence. *See* Tenn. R. Evid. 103(a)(2). These requirements may be satisfied by presenting the actual testimony, by stipulating the content of the excluded evidence, or by presenting an oral or written summary of the excluded evidence. *See* Neil P. Cohen, et al. *Tennessee Law of Evidence* § 103.4, at 20 (3d ed. 1995).

Ordinarily, the appellate courts will decline to consider issues relating to the exclusion of evidence if no offer of proof has been made. *See Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995); *State v. Pendergrass*, 795 S.W.2d 150, 156 (Tenn. Crim. App. 1989). However, offers of proof are not required when the substance of the evidence is apparent from the context, *see* Tenn. R. Evid. 103(a)(2), or when the trial court's refusal to allow further evidence affects the fairness of the proceedings. *See First Nat'l Bank & Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1305 (8th Cir. 1991); *Blankenship v. Blankenship*, App. No. 02A01-9603-CH-00051,

1997 WL 15241, at *3 (Tenn. Ct. App. Jan. 17, 1997) (No Tenn. R. App. P. 11 application filed).

Parties who choose to represent themselves are entitled to fair and equal treatment. *See Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996). Many of them are unschooled in the intricacies of the rules of evidence and the rules of trial practice. Accordingly, trial courts are expected to appreciate and to be understanding of the difficulties encountered by parties undertaking to represent themselves with little training or experience. *See Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). While they should accommodate a pro se litigant's legal naivete, they should stop short of giving a litigant an unfair advantage simply because the litigant is representing himself or herself.

Mr. Laursen requested the trial court to "offer some kind of proof" after being informed he would not be permitted to testify in the case. Even though Mr. Laursen did not use the term correctly, the trial court should not have cut Mr. Laursen short and should not have prevented further development of the proof. *See State v. Goad*, 707 S.W.2d at 853. In its role as the supervisor of the fairness of the proceedings, the trial court should have attempted to clarify the issue. The judge was familiar with the substance of Mr. Laursen's testimony because Mr. Laursen had testified before him during earlier trials. Not all of Mr. Laursen's testimony was inadmissible, and thus the trial court should have recognized that Mr. Laursen was attempting to preserve this issue for appeal. Cutting Mr. Laursen short reflects on the fairness of the proceeding, and accordingly, we decline to hold that Mr. Laursen has waived his right to take issue with the trial court's refusal to permit him to testify simply because he did not make a proper offer of proof.

## C.

The right of litigants to represent themselves is now firmly established in Tennessee. As a general matter, litigants may conduct and manage their own court cases, *see* Tenn. Code Ann. § 23-1-109 (1994), but this right is subject to reasonable control by the courts. *See Wright v. Quillen*, 909 S.W.2d 804, 814 (Tenn. Ct. App. 1995). Litigants who undertake to represent themselves do not forfeit their right to give evidence in their own case. *See, e.g., Hutter Northern Trust v. Door County Chamber of Commerce*, 467 F.2d 1075, 1078 (7th Cir. 1972); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cole*, 457 A.2d 656, 660 (Conn. 1983); *Ferrara v. Wells*, 728 S.W.2d 718, 719 (Mo. Ct. App. 1987); *State v. Joyner*, 848 P.2d 769, 774 (Wash. Ct. App. 1993). Thus, pro se litigants should be permitted to testify either in narrative or question and answer form.

Every litigant should be afforded an opportunity to "introduce all evidence competent and relevant to support the case alleged by him." *Blankenship v. Blankenship*, 1997 WL 15241, at *1; *see also McCarter v. McCarter*, App. No. 03A01-9606-CV-00196, 1996 WL 625798, at *2 (Tenn. Ct. App. Oct. 30, 1996), *perm. app. denied* (Tenn. Apr. 7, 1997). Likewise, every witness in Tennessee is presumed to be competent to testify except as otherwise provided by statute or the rules of evidence. *See* Tenn. R. Evid. 602; *Department of Human Servs. v. Norton*, 928 S.W.2d 445, 447 (Tenn. Ct. App. 1996); *State v. Key*, App. No. 02C01-9305-CR-00097, 1995 WL 366096, at *4 (Tenn. Crim. App. June 21, 1995) (No Tenn. R. App. P. 11 application filed).

The Harrisons assert that the trial court properly refused to permit Mr. Laursen to testify because of his repeated references to extraneous issues during the earlier portions of the trial. They point out that Tenn. R. Evid. 403 empowers trial courts to prevent irrelevant, cumulative, and prejudicial testimony. The record contains no indication, however, that the trial court based its decision on any reason other than Mr. Laursen's dual role as attorney and witness. We decline to find that Mr. Laursen was presumptively incompetent to give testimony in this case. The trial court had available far less drastic measures to assure Mr. Laursen's compliance with the evidentiary rules, and thus the trial court should have permitted Mr. Laursen to testify.

**III.**

## DAMAGES IN EXCESS OF THE AD DAMNUM CLAUSE

The Laursens also assert that the Harrisons' judgment for the decreased value of the land cannot exceed $5,000 - the amount of damages prayed for in their complaint. Generally, a judgment that exceeds the ad damnum clause is invalid. *See Gaylor v. Miller*, 166 Tenn. 45, 50, 59 S.W.2d 502, 504 (1933); *Mullins v. Greenwood*, 6 Tenn. App. 327, 335 (1927); *Cross v. City of Morristown*, App. No. 03A01-9606-CV-00211, 1996 WL 605248, at *3 (Tenn. Ct. App. Oct. 22, 1996), *perm. app. denied* (Tenn. Apr. 7, 1997). This rule is based on considerations of fairness because the purpose of a complaint is to provide an adverse party with sufficient notice of the allegations the party is called on to answer. *See Jasper Engine & Transmission Exch. v. Mills*, 911 S.W.2d 719, 720 (Tenn. Ct. App. 1995); *Frank Collier Auction & Realty Co. v. Rice*, App. No. 01A01-9608-CH-00384, 1997 WL 71817, at *3 (Tenn. Ct. App. Feb. 21, 1997) (No Tenn. R. App. P. 11 application filed).

Since we must reverse the judgment and remand the case for a new trial because the trial court should not have prevented Mr. Laursen from testifying, we need not decide whether the Laursens had actual notice that the Harrisons were seeking more damages for diminution of the property's value than they requested in their complaint's ad damnum clause. A good case for this conclusion can be made in light of the fact that the Harrisons had recovered diminution damages far in excess of $5,000 in the four trials that preceded the last trial. On remand, the trial court should permit the Harrisons to amend their complaint to state more specifically the amount of damages they are seeking for the diminution in the value of the farm.

## IV.

### MS. LAURSEN'S TENN. R. CIV. P. 60.02 MOTION

As a final matter, Ms. Laursen asserts that the trial court erred by denying her Tenn. R. Civ. P. 60.02(4) motion to set aside the January 9, 1995 judgment against

her that became final when she did not properly perfect her appeal. Even though this court had already reversed this judgment as a result of Mr. Laursen's appeal, the trial court declined to grant Ms. Laursen's motion on the ground that she should have sought relief from this court. The trial court is mistaken.

Both Mr. Laursen and Ms. Laursen appealed from the January 9, 1995 judgment against them. In our May 3, 1996 opinion, we determined that Ms. Laursen's appeal was not before the court and that the January 9, 1995 judgment should be reversed because the case should have been tried to a jury. On August 7, 1996, we denied Ms. Laursen's motion to amend the notice of appeal. Approximately one month later, Ms. Laursen filed a Tenn. R. App. P. 60.02(4) motion in the trial court requesting relief from the January 9, 1995 judgment because it had been reversed. Rather than acting on this motion before the fifth trial of this case in October 1996, the trial court did not act on the motion until July 2, 1997, when it entered an order denying relief on the ground that the motion should have been presented to this court.

The trial court's reasoning is wrong for two fundamental reasons. First, the procedural rules permit litigants to file Tenn. R. Civ. P. 60 motions in the trial court while their case is pending on appeal and allow appellate courts to remand the case to the trial court to consider the motion at the request of the moving party. *See Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 596 (Tenn. 1994). Second, Ms. Laursen was entitled to relief from the January 9, 1995 judgment under Tenn. R. Civ. P. 60.02(4) because the judgment had been reversed. Ms. Laursen filed a timely Tenn. R. Civ. P. 60 motion and demonstrated that it would be unjust to bind her to a judgment that had been reversed with regard to her husband. Accordingly, the trial court should have granted Ms. Laursen relief from the January 9, 1995 judgment.

**V.**

In the seven years since this litigation began, the parties have endured five trials and three appeals. We are loathe to continue this litigation and have endeavored to find a way to bring it to an appropriate conclusion without requiring a sixth trial. We have not succeeded because the law and the dictates of fundamental fairness

entitle Mr. Laursen to be a witness in his own case. Accordingly, we have no choice other than to vacate the judgment against Mr. Laursen and to remand the case for another trial. On remand, we recommend that the Laursens consider retaining counsel and that both parties consider whether this dispute could be resolved more quickly and inexpensively using one of the alternative dispute proceedings now available in lieu of a trial.

We vacate the judgment against Mr. Laursen and reverse the denial of Ms. Laursen's motion for post-judgment relief and remand the case to the trial court for further proceedings consistent with this opinion. We also tax the costs of this appeal in equal proportions against Earl and Dolorita Laursen and their surety and, jointly and severally against Thomas W. Harrison, Terry Harrison, and Brenda Harrison Kennamore for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE