[No. 28054. *En Banc.* October 17, 1940.]

THE STATE OF WASHINGTON, *Respondent,* v.
GUY W. HURD, *Appellant.*[1]

[1]Reported in 106 P. (2d) 323.

*C. D. Cunningham,* for appellant.

*Shirley R. Marsh, H. Jerard Imus,* and *Joe L. Johnson,* for respondent.

BLAKE, C. J.—The defendant, while superintendent of schools for Cowlitz county, was indicted and con-

victed on four counts for the violation of Rem. Rev. Stat., § 2334 [P. C. § 9061], subd. 2 of which provides:

"Every public officer who shall— . . .

"(2.) Be beneficially interested, directly or indirectly, in any contract, sale, lease or purchase which may be made by, through or under the supervision of such officer, in whole or in part, or which may be made for the benefit of his office, or accept, directly or indirectly, any compensation, gratuity or reward from any other person beneficially interested therein; . . .

"Shall be guilty of a gross misdemeanor, . . . "

The basic facts are not in dispute. In May, 1939, one Edna Olson was employed in the office of the county superintendent at the agreed wage of $4.50 per day. She signed a claim, which was approved by defendant, for $90. The claim was for twenty days' work. The claim was approved and paid. Upon receiving payment, Mrs. Olson handed $31.50 to Myrtle Knudson, chief clerk in the superintendent's office, who placed the money in an envelope and left it in the office vault. From there, it found its way into the hands of Golda Hurd, the wife of defendant. Evidence adduced by the state was sufficient to establish the fact that this transaction was so carried out pursuant to the contract of employment of Mrs. Olson by appellant.

Upon this transaction, two counts of the indictment were based, one on the first clause of subd. 2 of Rem. Rev. Stat., § 2334, and the other on the second clause. In other words, on one count defendant was charged with being beneficially interested in the contract with Mrs. Olson, and in the other with accepting compensation, gratuity, or reward from another person beneficially interested in the contract. The other two counts in the indictment were based upon a similar contract and transaction with Maude Flint, who was

employed in the county superintendent's office in August, 1939.

■ Appellant first challenges the sufficiency of the indictment on the ground that it was necessary to allege that he had authority to enter into the contracts with Mrs. Olson and Mrs. Flint. We think this assignment is without substance. Each count of the indictment contained the essential elements prescribed respectively by the clause of subd. 2 of Rem. Rev. Stat., § 2334, under which it was drawn.

■ Next, appellant challenges the sufficiency of the evidence on the same ground: That authority of appellant to enter into the contracts was not established. Rem. Rev. Stat. (Sup.), § 4200-5a [P. C. § 1567-16] (Laws of 1937, chapter 197, p. 973, § 3), provides that, when the duties of an office are greater than the person elected to it is able to perform, he may, "with the consent of the county commissioners," employ "necessary help." In the budget for 1939, the county commissioners provided for the employment in the "Superintendent of Schools' Office" of "6 Extra Clerks at such times as needed throughout the year at not to exceed 75¢ per hour each." We think this provision in the budget was sufficient, under Rem. Rev. Stat. (Sup.), § 4200-5a, to authorize appellant to employ Mrs. Olson and Mrs. Flint.

The appellant further contends that he was not "beneficially interested" in the contracts with Mrs. Olson and Mrs. Flint, and that he did not "accept, directly or indirectly, any compensation, gratuity or reward from any other person beneficially interested therein." The appellant and his wife testified that, under a standing agreement between them, the latter's earnings were her separate property; that no part of the money received by her from Mrs. Olson and Mrs. Flint went to appellant, nor did appellant receive

any direct or indirect benefit therefrom. The issue presented by this testimony was presented to the jury in instructions to the effect that Mrs. Hurd's earnings were presumed to be community property, but that the presumption might be rebutted by evidence "sufficient to raise in the minds of the jury a reasonable doubt as to whether or not said property was community property." Appellant argues, however, that these instructions not only permitted, but required, the jury to weigh the presumption that the money received by Mrs. Hurd was community property against the presumption that appellant was innocent. Appellant urges that the presumption of innocence is the strongest presumption known to the law; and that, as a matter of law, all other presumptions fall before it. We cannot accept the proposition that the issue presented amounts merely to the weighing of presumption against presumption.

■■ While the court has often said that property acquired during coverture is *presumed to be community property,* the statement, as applied to earnings of the spouses while living together, is hardly accurate. For, with respect to such earnings, Rem. Rev. Stat., § 6892 [P. C. § 1433], fixes their *status as community property.* See *Abbott v. Wetherby,* 6 Wash. 507, 33 Pac. 1070, 36 Am. St. 176. Of course, this status may be changed from community to separate property by agreement made in good faith. *Yake v. Pugh,* 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17. The burden, in this instance, was upon the defendant to prove such an agreement in order to establish the money received by Mrs. Hurd as her separate property—or, at least, to adduce evidence sufficient to raise a reasonable doubt in the minds of the jury as to its community status. 1 Wharton's Criminal Evidence, § 202; *Payne v. State,* 74 Ind. 203. See *State v. Nakashima,* 62 Wash. 686, 114 Pac.

894, Ann. Cas. 1912D, 220; *State v. Seifert*, 65 Wash. 596, 118 Pac. 746.

Under the evidence, we think the jury was warranted in finding that the money received from Mrs. Olson and Mrs. Flint by Mrs. Hurd was the community property of herself and appellant. It follows, therefore, that appellant was beneficially interested in the contracts with Mrs. Olson and Mrs. Flint, and that he accepted "compensation, gratuity or reward from [another] person beneficially interested therein."

Appellant complains that, in submitting the issue as to the separate or community status of the money received by Mrs. Hurd, the court gave inconsistent instructions. We are unable to perceive any inconsistency in the instructions. On the other hand, we think the court's instructions on the issue were fair, clear, and comprehensive.

Appellant urges that the court committed error in permitting the state to impeach its own witness, Mrs. Olson. Appellant undertook to justify the requirement that Mrs. Olson and Mrs. Flint contribute a portion of their salary warrants to Mrs. Hurd on the theory that the latter performed at home certain necessary work for the superintendent's office that Mrs. Flint and Mrs. Olson were not qualified to perform. At the trial, Mrs. Olson testified that, while she was on duty at the office all the days for which she claimed pay, it was unnecessary for her to be there the days that Mrs. Hurd was performing the work referred to at her home. It may be reasonably inferred that, in so testifying, Mrs. Olson intended to convey the impression that she did nothing to earn the money that she turned over to Mrs. Hurd and that Mrs. Hurd did earn it. Thereafter the following occurred:

"Q. You testified about that previously, when you were asked what your feelings were about having to give a portion of your wages to Mrs. Hurd you kind of said 'Well' and laughed. And then you were asked, 'Did you think you did not earn that money yourself?' and you answered, 'No. I earned the money.' And then you were asked, 'You thought you earned it all?' And you answered, 'Yes. I know I did.' And you were asked, 'In other words, you could have kept the entire warrant and you felt that it really belonged to you?' And you answered, 'Well, naturally, I would feel that way.' Was that your testimony under oath? OBJECTED TO BY COUNSEL FOR DEFENDANT as incompetent, irrelevant and immaterial and an attempt on the part of the prosecution to impeach their own witness. BY COUNSEL FOR THE STATE: This is a surprise to me and I want to know if she denies that she gave such testimony as that. . . . Q. Did you so testify? A. Well, I do not remember what I testified. Q. Do you deny that you said that? A. No. I do not deny that I said it."

Thereafter, Mrs. Olson was recalled, and the following occurred:

"Q. On or about the fifth of January, 1940, you testified under oath before the grand jury of Cowlitz County, Washington, in the grand jury room, in the court house in Kelso, Washington, in the presence of members of the grand jury and Mr. Johnson of the prosecutor's office and Mr. Horace Taylor, official reporter, as follows:

" 'Q. What was your feeling about having given a portion of your wages to Mr. Hurd? A. Well. (Witness laughs) Q. Did you think you did not earn all that money yourself? A. No. I earned the money. Q. You thought you earned it all? A. Yes, I know I did. Q. In other words, you could have kept the entire warrant and you felt it really belonged to you. A. Well, naturally, I would feel that way.'

"Q. Is that true? OBJECTED TO BY COUNSEL FOR DEFENDANT as an attempt on the part of the state to impeach their own witness. . . . Q. Was that your testimony? A. Well, I do not remember."

Thereafter, the reporter was called and, reading from his notes taken at the session of the grand jury, stated that Mrs. Olson so testified before the grand jury.

Conceding that no proper foundation had been laid for the impeaching testimony, and that it was error to admit it, we fail to see how appellant was prejudiced by it. Whether Mrs. Olson or Mrs. Hurd earned the money the latter received, was beside the issue. Under the statute, the only questions were whether appellant was beneficially interested in the contract with Mrs. Olson, and whether he accepted any compensation, gratuity, or reward from any other person beneficially interested in it.

Error in permitting a state's witness to be improperly impeached is not reversible error unless it is prejudicial. 17 C. J. 305.

Judgment affirmed.

ALL CONCUR.