[No. 30763. Department Two. December 20, 1948.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN A. MILLER,
*et al., Appellants.*[1]

[1]Reported in 201 P. (2d) 136.

150

*Grady & Grady,* for appellants.

*The Attorney General, Lyle L. Iversen* and *C. John Newlands, Assistants,* for respondent.

SIMPSON, J.—Honorable Smith Troy, attorney general of this state, instituted this action in the name of the state of Washington to recover a sum of money from defendants. After a trial to the court, sitting without a jury, findings of fact and conclusions of law were made, and based upon those findings, the court entered judgment in favor of the state. Defendants then appealed to this court.

The facts are: Appellants Miller are husband and wife. Appellant John A. Miller was county auditor of Klickitat county between February 1, 1944, and January 1, 1947.

Since the latter date, he has been county clerk of that county. The American Surety Company was the surety on Miller's official bond. Beginning February 1, 1944, and ending December 1, 1946, appellant Lena Miller was an employee in the county auditor's office of Klickitat county. From January 1, 1947, to September 30, 1947, she worked in the county clerk's office. Mrs. Miller received payment for her services from the county in the sum of $988.80. The above facts were reported to the attorney general by the state auditor November 17, 1947, and this action was commenced March 1, 1948.

It is appellants' first contention that the action was not brought by the real party in interest. They base their argument upon the theory that Mr. Miller was not guilty of malfeasance, misfeasance, or nonfeasance in office, and for that reason the attorney general did not have the authority to bring the action. We are unable to agree with appellants. The authority of the state to maintain an action of this nature rests upon two statutes. The first is Rem. Rev. Stat., § 11001 [P.P.C. § 945-11]. It provides:

"It shall be the duty of the auditor,— . . .
"10. To direct prosecutions in the name of the state for all official delinquencies in relation to the assessment, collection, and payment of the revenue, against all persons who, by any means, become possessed of public money or property, and fail to pay over or deliver the same, and against all debtors of the state. . . ."

The other statute, Rem. Rev. Stat., § 9958 [P.P.C. § 945-87], relates to the examination by the state auditor of the accounts of public officers. The pertinent portion of that statute reads:

"A report of such examination shall be made in triplicate, one copy to be filed in the office of the state auditor, one in the auditing department of the taxing district reported upon, and one in the office of the attorney general. If any such examination discloses malfeasance, misfeasance or nonfeasance in office on the part of any public officer or employee, within thirty days from the receipt of such copy of said report, it shall be the duty of the attorney general and he is hereby authorized to institute and prosecute

without delay in the proper county such legal action as is proper in the premises by civil process and promptly and efficiently prosecute the same to final determination to carry into effect the findings of any such examination."

■ Manifestly, the determination of whether the attorney general may institute an action by direction of Rem. Rev. Stat., § 9958, depends upon whether appellant John A. Miller was guilty of misfeasance, malfeasance, or nonfeasance in office. The statute is grounded on the sound public policy that no one shall be allowed to do that which has a tendency to be injurious to the public and is detrimental to the public good. Public policy, as indicated in the statute, demands that a public official receive from the public treasury only the amount provided for his salary.

■ There is a distinction between misfeasance, nonfeasance, and malfeasance. Misfeasance means the improper doing of an act an officer might lawfully do; or, in other words, it is the performance of a duty in an improper manner. Nonfeasance means the total omission or failure of an officer to enter upon the performance of some distinct duty or undertaking required by his office. Malfeasance has been defined as follows:

" 'Evil doing; ill conduct; the commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful; the doing of an act which the person ought not to do at all; the doing of what one ought not to do; the performance of some act which ought not to be done; the unjust performance of some act which the party had no right, or which he had contracted not, to do.' 38 C. J. 344.

" 'The terms malfeasance and neglect of duty are comprehensive terms and include any wrongful conduct that affects, interrupts, or interferes with the performance of official duty.' State v. Ward, 163 Tenn. 265, 43 S. W. (2d) 217." State ex rel. Knabb v. Frater, 198 Wash. 675, 89 P. (2d) 1046.

■ The pertinent portion of Rem. Rev. Stat., § 2334 [P.P.C. § 118-85], provides:

"Every public officer who shall— . . .

" (2.) Be beneficially interested, directly or indirectly, in any contract, sale, lease or purchase which may be made

by, through or under the supervision of such officer, in whole or in part, or which may be made for the benefit of his office, or accept, directly or indirectly, any compensation, gratuity or reward from any other person beneficially interested therein; . . .

"Shall be guilty of a gross misdemeanor, and any contract, sale, lease or purchase mentioned in subdivision 2 hereof shall be void."

This court has held that the employment of the spouse of a public official constituted a violation of the above statute.

Bearing in mind the definitions to which we have referred, it becomes at once apparent that John A. Miller violated the provisions of the statute last cited when he employed his wife in the offices of the auditor and clerk. By so doing, he received, indirectly at least, a compensation from the county in addition to his salary. These acts amounted to malfeasance in office.

It follows that the attorney general was empowered by Rem. Rev. Stat., § 9958, to bring the action against appellants. In any event, the attorney general had the authority to represent the state auditor and institute the action by virtue of the provisions of Rem. Rev. Stat., § 11001.

It is next argued by appellants that Rem. Rev. Stat., § 9958, prescribes a time limit within which the attorney general may maintain an action to assert the right and invoke the remedy. They contend that a statute of such import is one of nonclaim, in that the right was extinguished by failure to invoke the remedy within the time prescribed —that is, within thirty days after the attorney general received a copy of the report of the state auditor. They cite as sustaining authority, *Morris v. Orcas Lime Co.*, 185 Wash. 126, 53 P. (2d) 604, *Lane v. Department of Labor & Industries*, 21 Wn. (2d) 420, 151 P. (2d) 440, *Hutton v. State*, 25 Wn. (2d) 402, 171 P. (2d) 248, 34 Am. Jur. 16, Limitations of Actions, § 7, and 53 C. J. S. 904, Limitations of Actions, § 1 (c).

The *Morris* case had to do with Rem. Rev. Stat., § 5831-1, which provides that actions by a liquidating officer of an

insolvent corporation to recover a preference may be commenced at any time within six months from the time the application was filed for the appointment of a liquidating officer.

The *Lane* case distinguished a statute of nonclaim from a statute of limitations. It did not hold, however, that a statute of the nature we have in this case prevented recovery in cases where the official did not begin an action within the time indicated in the statute.

The *Hutton* case involved a tax lien. This court held that a lien created by a tax warrant under the provisions of Rem. Rev. Stat. (Sup.), § 8370-202 [P.P.C. § 962-35], may not be invoked outside or beyond the period of six years during which it is conferred by statute.

The other authorities cited are in accord with the holding of our cases. We are in accord with the rules of law as contended for by appellants, but cannot agree that they have any application to the facts of this case.

Respondent takes the position that the statute relative to the time in which the attorney general may be directed to bring an action is only directory, and is not mandatory, and that a delay in bringing an action does not affect the remedy.

Affirmative statutory provisions relating to the time or the manner of performing official acts, unlimited or unqualified by negative words, are generally considered directory rather than mandatory.

In *Demaris v. Barker*, 33 Wash. 200, 74 Pac. 362, this court held that the failure of a judge to decide a case within ninety days from its submission, as required by our state constitution, Art. IV, § 20, did not render the judgment void for want of jurisdiction. We followed the holding of that case in *Bickford v. Eschbach*, 167 Wash. 357, 9 P. (2d) 376. We stated that nothing in the constitutional provision requiring a decision within ninety days forbids a decision at any other time or lessens the jurisdiction of the judge of the superior court. The holding in the two cases just mentioned was approved in *In re Cress*, 13 Wn. (2d) 7, 123 P. (2d) 767.

In 3 Sutherland, Statutory Construction (3d ed. Horack), 102, § 5816, it is stated:

"A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of the officer."

The question presented here is strikingly like that raised in *Shekelton v. Toole County*, 97 Mont. 213, 33 P. (2d) 531, a case in which the board of county commissioners failed to adopt a resolution providing for the issuance of bonds within the statutory time. The statute there applicable required such action within thirty days after the election. In the disposition of that case, the following rule from 59 C. J. 1074, § 631, was approved, which, we conclude, is equally applicable here:

" 'Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly and prompt conduct of business, it is generally regarded as directory unless followed by words of absolute prohibition; and the same is true where no substantial rights depend on the statute, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results.' "

Accord: *Wood v. Chapin*, 13 N. Y. 509, 67 Am. Dec. 62; *Rawson v. Parsons*, 6 Mich. 400; *Smith v. Swain*, 71 N. H. 277, 52 Atl. 857; *James v. West*, 67 Ohio St. 28, 65 N. E. 156; *Perkins v. Roberts County*, 27 S. D. 281, 130 N. W. 443, Ann. Cas. 1913D, 601, 34 L. R. A. (N.S.) 581; and *Fuqua v. State*, 175 Tenn. 11, 130 S. W. (2d) 125.

These cases indicate that statutes fixing the time for official action are but directory and do not forbid action after the expiration of the period mentioned in the statute

■ It is clear that Rem. Rev. Stat., § 9958, governs not only cases brought for the benefit of the state, but also those instituted in the name of the state. The entire purpose of the statute is to protect the interests of the state and of those subdivisions for which it could bring actions.

■ It is our opinion that the thirty-day period mentioned in Rem. Rev. Stat., § 9958, was only directory, in that it simply instructed the attorney general to expedite the public business by bringing actions such as the present one within a certain period. We take judicial notice of the fact that hundreds of reports concerning public officials and public expenditures are made each year and that the business of the attorney general covers a wide field. It surely was not the intention of the legislature to allow public officials to escape liability for the illegal expenditure of public funds in the event press of business or other causes resulted in the commencement of actions being delayed.

■ Appellants argue that if Rem. Rev. Stat., § 9958, is not a statute of nonclaim, it must be regarded as a statute of limitations, and that the period had run in this case. Rem. Rev. Stat., § 167 [P.P.C. § 73-27], which covers actions brought by the state, reads:

"The limitations prescribed in this act (chapter) shall apply to actions brought in the name or for the benefit of any county or other municipality or quasi municipality of the state, in the same manner as to actions brought by private parties: *Provided, that there shall be no limitation to actions brought in the name or for the benefit of the state,* and no claim of right predicated upon the lapse of time shall ever be asserted against the state:  . . ." (Italics ours.)

It seems plain to us from the reading of the above statute that the statute of limitations had not run against the claim in this case.

Finally, appellant John A. Miller contends that he and his wife cannot be held responsible for the reason that he did not receive a benefit from the salary received by her. This contention is grounded upon the claim that he and Mrs. Miller had entered into an agreement that whatever money

Mrs. Miller earned in employment by her would be her separate property.

An examination of the record discloses the following: Mrs. Miller testified that over the years of her married life the earnings of her husband had not been sufficient after the family expenses had been paid to allow her any spending money, or anything to use for herself, and that in order that she might have such money, she worked at odd times for the county, and in packing apples. Further, that there always existed between herself and her husband an understanding that such money would be her own separate property. On cross-examination, she was pressed for details as to the terms of the agreement, and while she was unable to repeat the words used, she stated that such agreement did exist and that she used the money earned in her own way and did not contribute to the family expenses. She stated further that if she wanted to go some place she had her own money to use, and also if she wanted to buy something for, or do anything for the children, or do things she could not have done otherwise, she always used her own money in those ways.

Mr. Miller testified that he and his wife always had a separate property agreement, and she had the right to use the money she earned if she saw fit. On cross-examination, he was asked concerning the details of the agreement and stated that, after the lapse of so many years, he could not repeat the words of the agreement. He insisted, however, there was such an agreement and that he defrayed the family expenses himself, and his wife used her money as she desired. At one time during his cross-examination, he said: "There is no such agreement ever set up. Just whatever she earns she spends."

The evidence to which we have just referred was not sufficient to prove that appellants Miller had an agreement to the effect that Mrs. Miller's income should not be part of the community property.

Our statute, Rem. Rev. Stat., § 6892 [P.P.C. § 434-27], provides that property acquired after marriage by either husband or wife, or both, is community property. Of course,

the parties may enter into an agreement by which the status of the property may be changed. The proof of such agreement, however, should be clear and definite. The evidence does not reveal any definite agreement concerning the ownership of Mrs. Miller's earnings. On the other hand, it is apparent that Mr. Miller did receive at least an indirect benefit from the moneys received and expended by his wife. A spouse's vacation expenses and money spent for the children are certainly benefits to the community. The court was correct in holding that Mr. and Mrs. Miller did not have a property agreement such as claimed by them.

On three occasions, this court has held that a community was liable to repay the amounts received by either member of the community who was employed as an assistant in the office of the other member of the community who was a public officer.

In *Directors of School Dist. No. 302 v. Libby*, 135 Wash. 233, 237 Pac. 505, one of the defendants was a school director and, in conjunction with the other directors, employed her husband to transport children to and from the district school. We sustained a judgment which required the community, consisting of the director and her husband, to repay to the district the amount paid for the transportation of the children.

In *State v. Hurd*, 5 Wn. (2d) 662, 106 P. (2d) 323, it appears that a school superintendent employed his wife as his office assistant, and she was paid for her services from the county funds. The superintendent was convicted of a violation of Rem. Rev. Stat., § 2334. We affirmed the judgment because it was shown that the superintendent, as a member of a marital community, was beneficially interested in the salary his wife received.

We followed the rule announced in the cases just cited in *Beakley v. Bremerton*, 5 Wn. (2d) 670, 105 P. (2d) 40. In that case, the court held a contract by which the city attorney employed his wife as his clerk and stenographer was in violation of Rem. Rev. Stat., § 9106 [P.P.C. § 392-33], which provided that no city officer or employee should be

interested directly or indirectly in any contract for work performed or materials furnished by any person.

The basis of these decisions is that salaries or wages earned by either member of a marital community become community property and each receive a beneficial interest in the amounts earned.

It is our conclusion that the judgment of the trial court was correct. It is therefore affirmed.

MALLERY, C. J., ROBINSON, SCHWELLENBACH, and HILL, JJ., concur.

[1]Reported in 201 P. (2d) 156.