[No. 19252–3–I.   Division One.   February 8, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. OTIS PETER SMITH III, *Appellant*.

*Julie A. Kesler* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Ellen O'Neill–Stephens, Deputy*, for respondent.

WILLIAMS, J.*—Otis Peter Smith appeals from a conviction of first degree robbery. We reverse.

*Justice William H. Williams is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

FACTS

On April 28, 1986, at about 7 o'clock in the evening, Ann Pylilo was at a newsstand in the Pike Place Market, when she overheard an argument in which a man was accusing another man of taking his wallet. Pylilo started to walk to the other side of the newsstand, when she heard something hit the pavement. When she came to the end of the magazine rack, she saw a man, later identified as Norman Stone, lying on the pavement. Blood was coming out of his head and his left ear. Two men were standing nearby. One was saying that he had nothing to do with the incident. His voice was the same voice that Pylilo had heard arguing moments earlier.

This individual ran up the street, and Pylilo followed him about half a block. She then decided not to run after him, and so she returned to the scene and gave a description of the man to the police.

On her way home, Pylilo saw the man again. He was looking around nervously. He watched two police officers come out of a bar, and then he walked into that bar. Pylilo flagged down two other police officers and told them that the man they were looking for was in the bar and gave them a description of the suspect. The officers arrested the individual, who later turned out to be Otis Smith.

Robert Bradley had been at the newsstand when he saw Stone trip and fall. A man, whom Bradley later identified as Smith, was behind Stone. Bradley testified that at first, Smith appeared to be helping Stone up, but then Bradley saw Smith palm Stone's wallet out of Stone's back pocket and into his umbrella and then pass the umbrella on to another man. Stone grabbed Smith's jacket and began yelling that he had been robbed and to call the police. Smith tried to back up and then he hit Stone. Stone hit his head when he fell, and Smith left immediately. Bradley tried to stop the bleeding until the police and paramedics arrived. Bradley gave the police a statement and a description of the suspect.

Stone does not recall April 28, 1986, very well. He had no idea of how he ended up in the hospital until someone told him, nor did he recognize Smith in court. Dr. Lind testified that Stone had suffered a skull fracture and concussion and that it is common for someone with this type of injury to have some amnesia.

Smith testified that he did not commit the crime. He was at school all day. At 6:05 p.m., he caught the bus home and at 6:45, visited his neighbor. At 7 o'clock, he was stopped by the police.

Smith was charged by information filed on May 1, 1986, with one count of first degree robbery. A jury trial commenced on July 21, 1986. During jury voir dire, Smith announced to the court that he wanted to "handle . . . procedures" himself. The trial judge responded that Smith could handle his own proceeding, but that defense counsel should remain as an advisor. The judge then advised Smith to put his request in the form of a motion. Before Smith made the motion, the court again inquired:

COURT: You do not want him to be your attorney?

MR. SMITH: Yes, sir.

COURT: All right, he is no longer your attorney, but he is not discharged and will remain as an advisor.

The jurors then returned to the courtroom and the trial judge informed them that Smith was now representing himself.

After the lunch recess, the prosecuting attorney raised the issue of whether Smith made a knowing and intelligent waiver of counsel. The trial judge then asked Smith why he wanted to represent himself. Smith replied as follows:

Step aside for a minute. Because I disrespect the way he talks to me. And on the mental part I have a history since I was 19 of psychiatric, uh, schizophrenia and that's being scared and running scared and that experience scared me. But I overcome, overcame that problem several years ago. The first time, that's what made me do it. But I'm much better now, but still I'm going to the walk-in clinic at Harborview every week, once a week–twice a week. And I see my doctor once a month.

After ascertaining the name of Smith's doctors, the court asked again why Smith wanted to represent himself.

MR. SMITH: The real disrespectful way he talking to me and uh, and he grabbed me and I told him not to touch me.

COURT: Well, do you think you can work these problems out or do you want to represent yourself?

MR. SMITH: I still want to represent myself.

The prosecutor expressed concern that Smith's paranoia about his attorney might affect his ability to knowingly and intelligently waive his right to counsel. The prosecutor informed the court that it was discretionary with the court whether to permit Smith to waive his right to counsel.

The court then asked Smith what he wanted to do.

MR. SMITH: Well, if we waive it, it's over with for the day or we still have to keep going. I want to keep going on this.

COURT: Keep going.

MR. SMITH: Okay, thank you.

COURT: Do you want to be your own attorney. Is that what you want to do?

SMITH: Yes.

COURT: Okay. We're going to break.

After the jury was selected, the prosecutor again raised the waiver issue and asked the court if it was making a finding that Smith was intelligent and competent enough to waive his right to counsel. The trial judge then made the following finding on the record.

COURT: Go ahead and sit down. Ya, I had the opportunity to observe him. He started about an hour late. He was laying out all over the table. I admonished him through counsel. He's straightened his act up. He was having some type of stomach problem. He indicated having an ulcer which no longer bothers him. He appears to have gone through the system. He seems to be a little street wise at what's going on. He fired his attorney which he certainly has the right to do. The Court makes its finding that he's competent. He is more than competent to conduct his own trial. He may be a little light on law school training but he is wise in what he learned on

street and in relationships to the system I certainly think he has the ability to waive his counsel.

The jury found Smith guilty of first degree robbery. Judgment and sentence were entered on September 9, 1986. This appeal timely followed:

## WAIVER OF COUNSEL

A criminal defendant has the constitutional right to represent himself at trial. Const. art. 1, § 22 (amend. 10). The right to self–representation is also guaranteed by the sixth amendment to the United States Constitution. *Faretta v. California,* 422 U.S. 806, 807, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975).

■ The standards for waiver of the right to counsel are (1) competency to stand trial and (2) a knowing and intelligent waiver with "eyes open", which includes an awareness of the dangers and disadvantages of the decision. *State v. Hahn,* 106 Wn.2d 885, 894–95, 726 P.2d 25 (1986). *See also* RCW 10.77.020(1); CrR 4.1(c). Even a criminal defendant who is mentally ill may waive his right to counsel if the above standards are met. *State v. Hahn, supra.* In each case, the trial court must make a factual determination on the record. *State v. Hahn, supra* at 894–95.

Whether there has been an intelligent waiver of counsel is an ad hoc determination that depends upon the particular facts and circumstances of the case, including the background, experience and conduct of the accused. *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938). This determination is within the discretion of the trial court. *State v. Kolocotronis,* 73 Wn.2d 92, 102, 436 P.2d 774 (1968). The burden of proof is on the defendant asserting that his right to counsel was not competently and intelligently waived. *State v. Hahn, supra* at 901.

We find Smith's waiver of counsel to be invalid. First, the trial court did not make sufficient inquiry into Smith's

competence to stand trial. The test for competency to stand trial is whether the defendant has the capacity to understand the proceedings against him and to assist in his own defense. *State v. Hahn, supra* at 894. There is nothing in the record that shows that prior to his decision to waive counsel, Smith understood the proceedings against him and was able to assist in his own defense. Although Smith behaved oddly at times and informed the court that he had a history of mental illness and was a weekly walk–in patient at a mental health clinic, the trial judge made no attempt to evaluate his competence either through his own inquiry or by use of a psychiatric examination.

Secondly, the record fails to show that Smith's waiver was knowingly and intelligently made. The trial court should ensure that decisions regarding self–representation are made with at least minimal knowledge of what the task entails. *Bellevue v. Acrey,* 103 Wn.2d 203, 210, 691 P.2d 957 (1984). A colloquy on the record is the preferred means of ensuring that defendants understand the risks of self–representation. *Bellevue v. Acrey, supra* at 211. That colloquy, at a minimum, should consist of informing the defendant of the nature and classification of the charge, the maximum penalty upon conviction and that technical rules exist which will bind defendant in the presentation of his case. *Bellevue v. Acrey, supra* at 211. *See also State v. Hahn, supra* at 896 (for an example of the proper procedure for the trial court); *State v. Christensen,* 40 Wn. App. 290, 295 n.2, 698 P.2d 1069, *review denied,* 104 Wn.2d 1003 (1985) (for an advisory list of questions for examining prospective pro se defendants).

In absence of a colloquy, the record must otherwise show that the accused was aware of the risks of self–representation. *Bellevue v. Acrey, supra* at 211. Such an awareness requires the defendant to understand the seriousness of the charges, the possible maximum penalty, that technical rules exist which will bind defendant in the presentation of his case and that presenting a defense is not just a matter of

telling one's story. *Bellevue v. Acrey, supra* at 211. Accordingly, only rarely will adequate information exist on the record, in the absence of a colloquy, to show the required awareness of the risks of self–representation. *Bellevue v. Acrey, supra* at 211.

The record in the present case fails to satisfy the standards set forth in *Acrey* and *Hahn.* No colloquy appears between the trial judge and Smith wherein the judge addressed the risks of self–representation. The trial court permitted Smith to waive counsel with almost no inquiry whatsoever. During voir dire, when the prosecutor asked the trial court to make a better record, the trial judge merely asked Smith why he did not like his assigned counsel and what he wished to do. The court made no other inquiries or warnings about the charges or the risks of self–representation. Even though Smith was not totally without the aid of counsel, the failure of the trial court to make the necessary inquiries and warnings renders Smith's waiver of counsel invalid. Furthermore, the trial court never made a specific finding that Smith could make a knowing and intelligent waiver of counsel.

The State argues that the record shows that Smith had some knowledge of procedural rules because during trial he made a motion to dismiss, made objections, and cross–examined witnesses. The authorities cited above demonstrate that some knowledge of procedural rules is not sufficient for a valid waiver of counsel.

We find that Smith's election to represent himself and to waive his right to counsel was not knowingly and intelligently made because the record fails to establish that Smith was made aware of the dangers and disadvantages of self–representation.

Accordingly, the judgment of the superior court is reversed; the case is remanded (1) for a determination of

whether Smith should be allowed to proceed pro se, and (2) for a new trial.

SCHOLFIELD, C.J., and WEBSTER, J., concur.

Review denied by Supreme Court May 4, 1988.