[No. 27888-6-I.   Division One.   April 12, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. LESLIE
JOYNER, *Appellant.*

*Robert S. Bryan* and *Shafer, Moen & Bryan, P.S.,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

PEKELIS, A.C.J. — Leslie Joyner appeals from a judgment convicting him of rape of a child in the third degree. He claims that he should have a new trial because: (1) he was improperly denied representation by a public defender; (2) he did not knowingly and voluntarily waive his right to counsel; and (3) his right to testify was abridged because he was not permitted to testify in narrative form.

On August 17, 1990, Joyner was charged with the crime of rape of a child in the third degree.[1] Joyner applied for appointment of an attorney at public expense at the King County Office of Public Defense (OPD). Even though Joyner had no income, his application was denied because of his wife's income.

At Joyner's omnibus hearing on October 1, the Honorable George T. Mattson asked whether it was true that Joyner

---

[1] The information was amended to add a second count before trial.

wished to represent himself. Joyner responded, "Yes sir, your Honor." The judge asked whether Joyner was aware that he had a right to be represented by an attorney, and said that if Joyner could not afford an attorney, one would be appointed for him. Joyner responded, "Yes, sir, your Honor." The judge advised Joyner of the charge against him, the maximum penalty, and standard range for the offense. The judge determined that Joyner had a college education and had represented himself in a criminal proceeding on another occasion. At length and in detail, the judge explained to Joyner the ramifications of choosing to proceed without the services of an attorney. Throughout, Joyner indicated that he understood these ramifications.

During the hearing, Joyner advised the judge of the reason he did not have an attorney:

> Okay, the reason why I'm not — I don't have an attorney, okay, is because my wife is making too much money, right? And I'm not making money right now because they've started reducing us. So therefore I don't have any money. And I can't afford an attorney because it will cost $5,000.00 just to represent a lawyer. I've been sent down to the Public Defender's Office and they can't represent me because she's making too much money. So actually I'm caught between a brick and a hard place.

The following colloquy ensued:

> THE COURT: You understand that if you find yourself disagreeing with the decision of the Office of Public Defense, or felt that you truly were a person who ought to have a Court appointed attorney, you could make that motion to the Court and lay out what information you have and then they could take their point of view. The Court would still have the authority to appoint if they thought that you were a person who was entitled to have an appointed attorney.
>
> MR. JOYNER: Yes, sir. Your Honor, I think I can handle this one, okay? I know what you're telling me.

Judge Mattson reiterated this admonition:

> [Y]ou have the right to go through that process and to disagree with their result if you think they've unfairly excluded you from consideration and have a Court take a second look at it. But I want to make sure that today you're saying, I've gone through the process, I don't want to fiddle with it anymore. And I want to go on my own. But you do that knowing all these potential sort of negative side effects.

The following colloquy ensued:

MR. JOYNER: Why don't you let me consult with my lawyer and we will see what we can do about this. I'd like to know an attorney.

THE COURT: I've been told that in some situations, if you Order one from OPD you can enter into an arrangement where you pay back under a note if you're close. But if you're not even close, then they won't appoint an attorney and then you need to explore getting an attorney of your own.

So what I hear you saying to me is at least you want to think about it before you make the decision, is that right?

MR. JOYNER: Let me think on the Order before I make a decision.

The prosecutor then suggested a 2-week continuance conditioned on Joyner's waiver of his right to a speedy trial. Judge Mattson explained this to Joyner:

THE COURT: Would you be willing to do that? We'll give you two weeks to think it over and work it out. But that would be conditioned on your agreeing not to claim the right to a speedy trial for a period of two weeks. . . . Are you willing to do that in order to consult over these questions about whether you want to have an attorney or not?

. . . .

MR. JOYNER: I will waive. . . . I think I better just get it over with, okay?

THE COURT: "Get it over with" means to allow you to proceed without an attorney?

MR. JOYNER: Yes, sir. And if I decide to bring one I'll let you know.

Finding that "the defendant is knowingly, voluntarily and intelligently proceeding pro se", the judge entered an order permitting Joyner to proceed pro se.

When trial commenced on December 7, 1990, the trial judge, the Honorable Frank L. Sullivan, asked whether Joyner was representing himself. Joyner replied "Yes, sir." The State then requested, and Judge Sullivan granted, several motions in limine prohibiting defendant from introducing certain matters during the trial. After the State had presented its evidence and rested its case, and before Joyner commenced his, the State requested that in presenting his testimony to the jury Joyner be required to use a self-question format in order to give the prosecutor an opportu-

nity to object. Accordingly, Judge Sullivan advised Joyner that he would not be allowed to testify in narrative form. Joyner initially indicated that he understood this procedure.

When it came time to commence his case in chief, however, Joyner stated that he didn't want to take the stand, and asked simply to "give a summary". Judge Sullivan advised Joyner that he would not be permitted to make factual statements to the jury unless he did it from the witness stand by questioning himself. At that point Joyner declined to testify, explaining "I'm not equipped to do my own that way. It's kind of hard, so I will not. . . . I don't know how to ask myself questions and answer the questions, because I'm not, I'm not, as you know, an attorney, and I don't know all the rules and regulations." Judge Sullivan reminded Joyner that he had chosen to proceed pro se and that he had been told that he would be bound by the same rules as an attorney. Joyner rested without having presented any evidence.

The jury found Joyner guilty of both counts of third degree rape of a child. After the verdict, an attorney appeared and filed a posttrial motion for a new trial on Joyner's behalf. A new trial was denied. Joyner appeals.

## I

First, Joyner contends that the trial court should have redetermined OPD's decision that he was not entitled to appointed counsel. Joyner argues that had the trial court done so, it would have concluded that OPD had improperly considered the income of Joyner's spouse.

■ This argument fails for two reasons. First, the trial court properly discharged its responsibilities in this case. Although a court may not blindly defer to an erroneous determination of indigence by a designee such as OPD, here the trial judge specifically advised Joyner of his right to appointed counsel, and twice advised him of the right to challenge the OPD determination in court if he disagreed with it or felt that he was "a person who ought to have a Court appointed attorney". Joyner understood the reason for

OPD's determination, yet he never asked the judge to redetermine his eligibility and expressly declined the judge's invitation to make such a challenge.

Joyner's argument fails for the additional reason that OPD's consideration of his wife's income was in fact proper. Joyner relies solely on the following provision of the rules of criminal procedure: "[C]ounsel shall be provided to any person who is financially unable to obtain one without causing substantial hardship to the person or to the person's family. *Counsel shall not be denied to any person merely because the person's friends or relatives have resources adequate to retain counsel*". (Italics ours.) CrR 3.1(d)(1). Joyner contends CrR 3.1 precluded the OPD from taking his wife's income into account because the word "relative" in CrR 3.1(d)(1) must be read to include "spouse".

Joyner has overlooked RCW 10.101, however. The statutory provision on the determination of indigence expressly permits consideration of a spouse's income: "The appointment of counsel shall not be denied to the person because the person's friends or relatives, *other than a spouse . . .*, have resources adequate to retain counsel". (Italics ours.) RCW 10.101.020(2).

This clear legislative mandate is consistent with the black letter rule that all the earnings of a spouse during marriage are community property,[2] as well as several cases holding that a spouse's assets are available for payment of the legal fees of an otherwise indigent criminal defendant. *See State v. Clark*, 88 Wn.2d 533, 563 P.2d 1253 (1977); *United States v. Conn*, 645 F. Supp. 44 (E.D. Wis. 1986); *United States v. O'Neill*, 478 F. Supp. 852 (E.D. Pa. 1979). Thus, even in the absence of the statute, CrR 3.1 would allow for consideration of a spouse's income.

We conclude Joyner suffered no infringement of his right to appointed counsel.

---

[2]*State v. Miller*, 32 Wn.2d 149, 159, 201 P.2d 136 (1948); *see* RCW 26.16.030; Cross, *The Community Property Law in Washington*, 61 Wash. L. Rev. 13, 27-28 (1986) ("an asset onerously acquired during marriage is presumptively community property" (footnote omitted)).

## II

Joyner next contends that he did not waive the right to retained counsel. He claims that his equivocation about his wish to consult an attorney renders his decision to proceed pro se defective.

A criminal defendant may waive the constitutional right to be represented by counsel and choose instead to represent himself or herself at trial. *Faretta v. California*, 422 U.S. 806, 807, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975); *State v. Smith*, 50 Wn. App. 524, 528, 749 P.2d 202, *review denied*, 110 Wn.2d 1025 (1988). To be valid, a waiver must be knowing and intelligent, which includes "awareness of the dangers and disadvantages of the decision." *Smith*, at 528. The burden of proof is on the defendant who asserts that his or her right to counsel was not competently and intelligently waived. *Smith*. A colloquy on the record will establish a knowing and intelligent waiver if it demonstrates that the decision regarding self-representation was made with at least minimal knowledge of what the task entails and that defendant understood the risks of self-representation. *Bellevue v. Acrey*, 103 Wn.2d 203, 210-11, 691 P.2d 957 (1984).

The record in the present case more than satisfies the minimum standards for establishing a knowing and intelligent waiver. Joyner was advised at length that the trial would be governed by formal rules and procedures and that the judge would hold him to the same rules that apply to lawyers. Judge Mattson advised him several times that he might be disadvantaged by self-representation. During the colloquy he was asked repeatedly whether he understood what the judge had told him and each time he responded affirmatively. Joyner chose to proceed.

However, Joyner claims that his decision to represent himself in this case was not "unequivocal". Toward the end of the omnibus hearing, Joyner did indicate that he would think about obtaining counsel. When Judge Mattson suggested he waive his right to a speedy trial in order to "think it over", Joyner declined to do so. Consequently, Judge Matt-

son entered an order finding a knowing and intelligent waiver, but advised Joyner that he could change his mind.

As Judge Mattson recognized when he entered the order, Joyner's ambivalence did not vitiate his affirmative decision to proceed pro se. Surely, a pro se defendant may legitimately change his or her mind and choose to retain counsel following a valid waiver. Apparently, Joyner did not do so. Despite the fact that Judge Mattson urged Joyner to get an attorney promptly if he was going to get one, there is no indication in the record that Joyner contacted or desired to contact an attorney during the 5-week period before trial. In fact, during the omnibus proceeding he explained that he had hired lawyers before that didn't do anything: "I don't want to go through that again either." "I'm done with those two lawyers. . . . I think I can handle it myself because I don't have the money to waste in this." Furthermore, when trial commenced, Joyner said nothing about wishing to obtain a lawyer.

Under these circumstances, we conclude that the record supports Judge Mattson's determination that Joyner knowingly and intelligently waived his right to be represented by counsel. Thus, Joyner's right to counsel was not abridged.

### III

■ Next, Joyner argues that the trial court unconstitutionally abridged his right to testify freely in his own defense when it denied his request to testify in narrative form. While it is undisputed that a criminal defendant has the constitutional right to testify in his or her own defense, *see, e.g., Rock v. Arkansas*, 483 U.S. 44, 49, 97 L. Ed. 2d 37, 107 S. Ct. 2704 (1987), Joyner offers no authority to support his argument that requiring a defendant to testify in a question-and-answer format is violative of this right.

The only case Joyner cites that is remotely similar to the issue on appeal fails to support his position. In *People v. Myrick*, 638 P.2d 34 (Colo. 1981), appellant claimed his right to testify was chilled by the judge's tone of voice telling him

he would be subject to cross examination if he exercised the right to testify rather than remain silent. Rejecting the appellant's argument, the *Myrick* court applied the following test for determining when the right to testify has been unconstitutionally chilled: "A defendant must not pay a court-imposed price for the exercise of his constitutional right." 638 P.2d at 38 (citing *Carter v. Kentucky*, 450 U.S. 288, 67 L. Ed. 2d 241, 101 S. Ct. 1112 (1981)).

In this case, Joyner fails to identify what unconstitutional "price" he was asked to pay. Our authorities make clear that only an undue burden on a criminal defendant's choice of *whether to testify* is unconstitutional. *See State v. Hardy*, 37 Wn. App. 463, 467, 681 P.2d 852 (to establish violation of constitutional right to testify, defendant must show that his attorney "actually prevented him from testifying in his own behalf") (quoting *State v. King*, 24 Wn. App. 495, 499, 601 P.2d 982 (1979)), *review denied*, 102 Wn.2d 1001 (1984). Here, however, the judge's ruling affected only the *manner* in which Joyner was to testify. The trial judge gave Joyner ample opportunity to testify in a question-and-answer format. Because Joyner could have chosen to exercise his constitutional right, we find no abridgment of Joyner's right to testify in his own defense.[3]

We conclude that Joyner has failed to establish any constitutional defect in the judge's ruling. To prevail, therefore, Joyner must establish that the ruling was a manifest abuse of discretion.

It is well established that decisions regarding the manner in which the right to proceed pro se is implemented are within the sound discretion of the trial judge. *See State v.*

---

[3]Joyner also claims that the trial court's order violated due process because it came as unfair surprise. However, Joyner was fully advised at the omnibus hearing that he would be held to technical rules of evidence and procedure that he might not be familiar with. He nevertheless chose to proceed pro se and cannot now claim that his inability to present his case in accordance with the procedural rulings of the trial judge denied him a fair trial. *Cf. Smith*, at 529-30 (a risk of self-representation is "that presenting a defense is not just a matter of telling one's story").

*Hightower*, 36 Wn. App. 536, 541, 676 P.2d 1016, *review denied*, 101 Wn.2d 1013 (1984); 2 W. LaFave & J. Israel, *Criminal Procedure* § 11.5, at 50-51 (1984). In general, the trial judge has broad discretion in deciding whether to allow narrative testimony. ER 611(a); *United States v. Young*, 745 F.2d 733, 761 (2d Cir. 1984), *cert. denied sub nom. Myers v. United States*, 470 U.S. 1084 (1985). Although pro se defendants are often permitted to testify in narrative form to facilitate presentation of their case,[4] it is not necessarily an abuse of discretion to require a pro se defendant to use a question-and-answer format. *See Hutter Northern Trust v. Door Cy. Chamber of Commerce*, 467 F.2d 1075, 1078 (7th Cir. 1972) (denial of pro se request to testify in narrative form was "well within the proper exercise of the judge's discretion").

In the light of the several evidentiary rulings in limine in this case, the trial judge could well have determined that orderly procedure required the prosecutor be given an opportunity to object to Joyner's testimony. In fact, the record indicates that the trial court might have had good reason to believe that Joyner would seek to introduce excluded evidence.[5] Consequently, under the circumstances, the ruling was not an abuse of discretion.

Affirmed.

SCHOLFIELD and AGID, JJ., concur.

Reconsideration denied May 14, 1993.

---

[4]*See, e.g., State v. Chavis*, 31 Wn. App. 784, 786, 644 P.2d 1202 (1982) (defendant "appeared pro se . . . and testified in narrative form concerning his theory of the case").

[5]Just after the judge asked whether Joyner was going to present any evidence, Joyner replied "I'm going to show the jury the parts of the deposition where things was, didn't come out, that part was suppressed. . . . [T]here has to be some evidence that has to be brought forth in, regarding the defendant going to the doctor all the time." This was a reference to past medical records of the victim that had been ruled inadmissible at the outset.