IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2001

## STATE OF TENNESSEE v. FRANK C. PEASE

**Direct Appeal from the Criminal Court for Anderson County**
**No. 99CR0349     James B. Scott, Jr., Judge**

**No. E2000-02469-CCA-R3-CD**
**October 24, 2001**

The defendant, Frank C. Pease, appeals his conviction for criminal contempt. The sole issue for our determination is whether the evidence was sufficient to support his conviction. Since the contempt finding was based upon defendant's anticipated, rather than actual, refusal to follow the court's order, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Contempt Dismissed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Frank C. Pease, Oak Ridge, Tennessee, *Pro Se.*

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; James N. Ramsey, District Attorney General; and Janice G. Hicks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

Defendant contends in this appeal that the trial court erroneously adjudged him in criminal contempt.[1] An analysis of the trial transcript reveals the following.

---

[1] The defendant has raised other issues in this appeal. However, the only issue properly before us is whether the trial court erred in finding the defendant guilty of criminal contempt. Therefore, this will be the sole issue addressed in this appeal.

The defendant represented himself at a jury trial on charges of driving on a suspended license. At the conclusion of the state's proof, the *pro se* defendant indicated his intention to testify in narrative form. The trial court instructed the defendant that his testimony would have to be presented in question and answer form rather than in narrative form. The defendant stated he was unable to present his testimony in that fashion due to the inherent difficulty in both asking and answering his own questions. Subsequently, the following colloquy took place out of the jury's presence:

THE COURT: Now, Mr. Pease, you may testify but you are going to testify by asking yourself questions. We will bring the jury back.

MR. PEASE: Your Honor, I object. I'm making my objection. You can hold me in contempt if you like. Okay. I have to testify in the only way that I feel I can.

THE COURT: Well, I am not going –

MR. PEASE: If you don't feel that I can get a fair hearing in your court, then please recuse yourself.

THE COURT: Mr. Pease, let me tell you what is going to happen. You keep showing your temper, and I am going to have you removed from the courtroom and placed in jail. It is that simple. You either –

MR. PEASE: Well, I –

THE COURT: You either – listen to me. We try murder cases in this court, and we don't have problems like you are giving me. Now you either follow what I say or you will go back to jail. We will declare a mistrial if you will request it in this case. But I am not going to contend with you telling me what you are going to do.

MR. PEASE: Your Honor –

THE COURT: That is contrary to procedure.

MR. PEASE:        I withdraw as counsel *pro se*.

THE COURT:      You do not have that privilege.

MR. PEASE:        I do have that privilege. I just fired my lawyer. Now I stand here before this Court, His Honorable [sic]. Please present me with a lawyer to finish the case or a mistrial, whichever you feel is necessary.

[PROSECUTOR]:    I object to a mistrial.

THE COURT:      The Court will declare a mistrial in this case. You will be placed in contempt of court, and you will be held until I have a hearing on your bond.

Thereafter, the trial court formally declared the mistrial and released the jury. The trial court then entered a judgment of conviction for criminal contempt with the following written findings:

The defendant having committed criminal contempt in the presence of the Court by arguing with the Court and refusing to follow the Court's instruction and further telling the Court that the defendant would continue to refuse to abide by the Court's order.

The trial court sentenced the defendant to five days in jail.


**CONTEMPT**

In Tennessee, the court's authority to punish certain acts as contempt derives solely from statute. State v. Turner, 914 S.W.2d 951, 955 (Tenn. Crim. App. 1995). Tenn. Code Ann. § 29-9-102 sets forth conduct defined as contempt:

(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;
(2) The willful misbehavior of any of the officers of such courts, in their official transactions;
(3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;
(4) Abuse of, or unlawful interference with, the process or proceedings of the court;

(5) Willfully conversing with jurors in relation to the merits of the cause in the
trial of which they are engaged, or otherwise tampering with them; or
(6) Any other act or omission declared a contempt by law.

To constitute contempt, conduct must be "willful" and cause an actual obstruction of the administration of justice. Turner, 914 S.W.2d at 956. An obstruction to the administration of justice is any willful misconduct which embarrasses, hinders, obstructs, or derogates the authority or dignity of the court. Black v. Blount, 938 S.W.2d 394, 401 (Tenn. 1996). A criminal contempt may be punished summarily if the judge certifies that he or she saw or heard the conduct constituting the contempt, and it was committed in the actual presence of the court. Tenn. R. Crim. P. 42(a). The order of contempt shall recite the facts and shall be signed by the judge and entered of record. *Id.* The purpose of this summary contempt mechanism is to punish conduct when necessary to vindicate the dignity and authority of the court, and it may be invoked to prevent contumacious conduct from disrupting the orderly progress of a criminal trial. Turner, 914 S.W.2d at 956. However, because "summary punishment departs, often dramatically, from traditional notions of due process that are the hallmarks of criminal justice," it should be reserved for those exceptional circumstances when it is essential. *Id.* at 957.

### STANDARD OF REVIEW

In a criminal contempt case, the accused's guilt must be established beyond a reasonable doubt. Black, 938 S.W.2d at 398. The standard of review is whether, after reviewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] *Id.*; *see also* Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). We will not reweigh the proof on appeal. Black, 938 S.W.2d at 398.

### ANALYSIS

The trial court's criminal contempt finding was based on the defendant's "arguing with the Court" and "refusing to follow the Court's instruction." We must determine whether the acts of the defendant constituted willful misbehavior obstructing the administration of justice or willful disobedience to a lawful command of the court.

### A. Arguing as Contempt

We first conclude that the defendant's behavior, though disrespectful and obstinate, does not rise to the level of "arguing" that obstructed the administration of justice. Regardless, it appears the

---

[2]The state insists upon the "correctness of the trial court's exercise of discretion in holding [defendant] in contempt." To the extent this implies an abuse of discretion standard of review, we reject such a standard of review.

contempt finding was based primarily upon the defendant's statements that he would testify in narrative form in spite of the trial court's instruction to the contrary. Therefore, we address the propriety of the finding of contempt based upon the alleged unwillingness to follow the trial court's instruction not to testify in the narrative form.

## B. Prohibition on Narrative Testimony

Defendant contends the trial court erred by ordering him not to testify in the narrative form. We have found no Tennessee case relating to the authority of the trial court to bar a narrative form of testimony. The Tennessee Court of Appeals, while noting that *pro se* litigants should be able to conduct and manage their own cases, held that "*pro se* litigants should be able to testify either in narrative or question and answer form." Thomas W. Harrison, et al v. Earl Laursen, et al, No. 01A01-9705-CH-00238, 1998 WL 70635, at *4 (Tenn. Ct. App. filed February 20, 1998, at Nashville). However, we do not read that opinion as necessarily mandating the trial court to give the *pro se* litigant the absolute right to choose the form of his or her testimony. Another jurisdiction has concluded that there is no constitutional violation by the denial of the right to testify in the narrative form. State v. Joyner, 848 P.2d 769, 774 (Wash. App. 1993).

We do note the inherent authority of the trial court to exercise control over the presentation of evidence. Tenn. R. Evid. 611(a). Addressing open-ended "narrative questions" from lawyers which pose the danger of allowing a witness to bring in irrelevant information, Professor Cohen states the following:

> Courts differ markedly in their receptivity to these questions. Some allow them and others do not. Under Rule 611(a), however, judges should allow counsel to present evidence and conduct the trial until counsel abuses its responsibility. This means that counsel should be permitted to elicit narrative questions that do not unduly waste time or do not encourage the jury to hear inadmissible evidence.

N. Cohen, et al., **Tennessee Law of Evidence** § 6.11[8] (4th ed. 2000).

We recognize that a defendant in a criminal case has the constitutional right to testify. *See* Rock v. Arkansas, 483 U.S. 44, 49-52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); Momon v. State, 18 S.W.3d 152, 157 (Tenn. 1999). We also recognize the inherent awkwardness in a question and answer form of testimony from a *pro se* defendant. In line with Professor Cohen's view, the trial court could properly allow narrative testimony by a *pro se* defendant unless it is apparent the defendant will, or until the defendant does, abuse this option by testifying as to inadmissible evidence. We see no justification for a blanket prohibition of narrative testimony in all *pro se* cases. However, we also recognize the discretionary authority of the trial court to control the presentation of evidence depending upon the facts and circumstances of each case. State v. Harris, 839 S.W.2d

54, 72 (Tenn. 1992) (noting the "propriety, scope, manner, and control of examination of witnesses is within the trial court's discretion").

## C. Erroneous v. Void Order

Nevertheless, we need not decide in this case whether the trial court erred in this regard. One must obey a court order unless it is void. State v. Jones, 726 S.W.2d 515, 517-19 (Tenn. 1987). The order of the trial court to testify in question and answer form was, at most, erroneous, not void. Therefore, whether the trial court erred in ordering defendant not to testify in narrative form is immaterial and need not be determined in this appeal.

## D. Anticipatory Contempt

The crucial inquiry in this appeal is whether the defendant may be found in contempt prior to an actual violation of the court's order. Although the trial court was faced with defendant's stated intention to testify in violation of the order, it did not give Pease a chance to testify because a mistrial was declared. One cannot be held in contempt based upon possible future conduct. Mayer v. Mayer, 532 S.W.2d 54, 60 (Tenn. Ct. App. 1975); Raymond Savoy v. Brenda Schultz, No. 02A01-9212-CH-00355, 1993 WL 541074, at *3 (Tenn. Ct. App. filed December 30, 1993, at Jackson), *perm. to app. denied* (Tenn. 1994).

Our jurisprudence does not recognize the doctrine of "anticipatory contempt." United States v. Bryan, 339 U.S. 323, 341, 70 S. Ct. 725, 735, 94 L. Ed. 884 (1950). Thus, a stated intention not to comply with a subpoena "does not mature [for contempt purposes] until the return date of the subpoena." *Id*. at 330, 70 S. Ct. at 730. In so ruling, the court noted "a witness may always change his mind." *Id*.

In analyzing the federal contempt statute, 28 U.S.C. § 1826, the United States Court of Appeals for the Sixth Circuit held that a potential witness's stated intention not to testify in the future is not an act of contempt until the witness is actually called to testify and refuses. United States v. Johnson, 736 F.2d 358, 363 (6th Cir. 1984); *see also* In Re Contempt of Dougherty, 413 N.W.2d 392 (Mich. 1987) (holding court must wait until time for performance arrives before punishing one for contempt); Board of Education v. Brunswick Education Assoc., 401 N.E.2d 440 (Ohio 1980); In Re White, 395 N.E.2d 499 (Ohio App. 1978).

We likewise conclude that Tenn. Code Ann. § 29-9-102 does not authorize anticipatory contempt. Since one may well change his or her mind prior to actual testimony, a stated intention to testify contrary to the court's instruction cannot be punished as contempt until he or she actually testifies. Thus, the evidence is insufficient to support the finding of criminal contempt.

## CONCLUSION

Accordingly, we reverse the judgment of the trial court and dismiss the charge of criminal contempt.

_____
JOE G. RILEY, JUDGE